IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED NATURAL FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFINITE PERIPHERALS, LLC, *et al.*, <br><br> Defendants. | Case No. 24 C 7122 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

United Natural Foods, Inc. ("Plaintiff" or "UNFI") filed this lawsuit alleging that Infinite Peripherals, LLC ("Infinite Peripherals") and IPC Mobile Holdings, Inc. ("IPCM") (together, "Defendants") breached the parties' contract under a revocation of acceptance theory and breached the express and implied warranties between the parties. (*See* Am. Compl., Dkt. 17). Defendants have moved to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Am. Mot., Dkt. 27). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

From August 24, 2020, through October 1, 2021, Plaintiff purchased over 9,200 handheld devices from Defendants. (Am. Compl. ¶¶ 8-13). Defendants designed, manufactured, and delivered the devices to Plaintiff after the company issued a request for proposal to replace an earlier model of the handheld devices. (*Id.* ¶¶ 9, 12). Plaintiff, in turn, provided the devices to its customers to allow them to scan products and efficiently order them from Plaintiff. (*Id.* ¶ 11). The devices were branded with Plaintiff's name and included "pistol mechanisms," which allowed the scanning of goods; and while an earlier model included a backstop for the pistol mechanism to operate properly, Defendants manufactured the new devices without such a backstop. (*Id.* ¶¶ 11-

12). Plaintiff allegedly paid a total of $6,554,976.79 for the devices, the sales of which were evinced by purchase orders and invoices and included written express warranties for each device that was shipped. (*Id.* ¶ 14).

Starting in 2021, however, Plaintiff's customers began complaining about the devices. (*Id.* ¶ 17). Plaintiff claims it "immediately brought [its customers'] issues to Defendants' attention." (*Id.* ¶ 18). After initially insisting that the source of the issue was software related, Defendants acknowledged that their engineering department had failed to consider the expected use of the devices and to include backstops that were in earlier models. (*Id.* ¶¶ 19-21).

Defendants eventually paid to replace or repair the defective devices. (*Id.* ¶ 26). But during that process, Plaintiff incurred costs related to shipping, handling, warehousing, and other logistical matters that Defendants have refused to reimburse. (*Id.* ¶¶ 25-26). Furthermore, Plaintiff had to expend additional resources to investigate the issue and handle the replacement devices for its customers. (*Id.* ¶ 28). Due to the errors, Plaintiff's customers were hindered and prevented from ordering products, allegedly causing financial and reputational damage to Plaintiff, including the loss of customers entirely. (*Id.* ¶¶ 29-30). Plaintiff alleges that it continues to receive complaints about the devices, which continues to damage the company. (*Id.* ¶ 33).

Due to Defendants' alleged refusal to compensate Plaintiff for the harm caused, Plaintiff initiated this five-count diversity action on August 12, 2024 (Compl. Dkt. 1). In response to Defendants' motion to dismiss filed on October 14, 2024 (Mot., Dkt. 14), Plaintiff amended the complaint on November 5, 2024 (Am. Compl., Dkt. 17). The operative complaint raises claims of breach of contract based on revocation of acceptance and breach of express and implied warranties between the parties. Defendants have moved again for dismissal of the complaint (Am. Mot., Dkt. 27) on various grounds, and that motion is fully briefed.

**LEGAL STANDARD**

Rule 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For purposes of analyzing a motion to dismiss, facts that are well-pled must be accepted by the court as true, and all reasonable inferences must be drawn in the plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the court need not accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). And a claim must be facially plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). But when a written instrument, such as a contract is attached to the complaint as an exhibit, its provisions become a part of the pleading "for all purposes." Fed. R. Civ. P. 10(c). And while a court must accept well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls. *See Rosenblum*, 299 F.3d at 661 ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)). "[A] plaintiff may plead himself out of court by attaching documents to the complaint that

3

indicate that he or she is not entitled to judgment." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999).

## DISCUSSION

Plaintiff brings five claims against Defendants: breach of contract under a revocation of acceptance theory (Count I), breach of an express warranty (Count II), breaches of the implied warranty of merchantability (Count III) and fitness for a particular purpose (Count IV), as well as a claim for revocation of acceptance (Count V),[1] which relies on the same theory as Plaintiff's breach of contract claim. In their motion to dismiss, Defendants argue that IPCM is not a proper party to this dispute and that the entire amended complaint must be dismissed. The Court will address each argument and claim below.

### I. Claims against IPCM

As a threshold issue, Defendants contend that IPCM should be dismissed because it was not a party to any alleged agreement with Plaintiff; rather, its subsidiary Infinite Peripherals was. (Am. Mot., at 94, Dkt. 27).[2] Plaintiff acknowledges in a footnote that the warranties at issue identify Infinite Peripherals only. Nevertheless, Plaintiff asserts without citation to any supporting authority that merely alleging that IPCM is a holding company for Infinite Peripherals "may be sufficient to ascribe liability," and seeks expedited discovery on the issue. (Resp., at 110, n.1, Dkt. 30). The Court declines Plaintiff's request since Plaintiff has already amended the complaint once and still failed to adequately allege that IPCM is a party to any agreement in question.

---

[1] Although the revocation of acceptance claim is listed as "Count VI" in the complaint, there are only five counts listed and the amended complaint skips from Count IV to VI, the Court refers to it as Count V.

[2] Page numbers in citations refer to the "PageID" in the CM/ECF header, not "Page __ of __" in the CM/ECF header or any page number appearing in the footer.

4

"As a general principle of corporate law deeply ingrained in our economic and legal systems, a parent company, such as [IPCM], is not liable for the acts of its subsidiary." *Mesenbring v. Rollins, Inc.*, 105 F.4th 981, 984 (7th Cir. 2024) (quotes omitted). The Supreme Court of Illinois has adopted a narrow exception to this general principle of limited liability known as direct participant liability. *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007). Under that theory, a parent company may be held liable for the acts of its subsidiary if it "specifically directs an activity [] where injury is foreseeable." *Id.* Stated differently, to prevail, a plaintiff must show: "[1] a parent's specific direction or authorization of the manner in which an activity is undertaken and [2] foreseeability" of injury. *Id.* However, the direct participant liability theory applies solely to torts or violations of statutes and does not extend to contractual claims under Illinois law. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651-652 (7th Cir. 2015) ("Illinois courts have applied this theory of direct participation to torts or violations of statute, not to breaches of contract."); *Phillips v. WellPoint Inc.*, No. 10-CV-00357-JPG, 2012 WL 6111405, at *11 (S.D. Ill. Dec. 10, 2012) ("The Court will leave it to the Illinois state courts to determine whether liability under the direct participant liability theory should be expanded to breach of contract claims."); *Boston Fish Market, Inc. v. EMS-USA Insulated Doors, Inc.*, No. 12-C-6751, 2013 WL 2421744, at *2-4 (N.D. Ill. June 3, 2013) (declining to extend direct participant liability doctrine from tort cases to contract cases until Illinois state courts do so).

In this case, all of Plaintiff's claims lie in contract. *See Bayer Healthcare LLC v. Aeropres Corp.*, 767 F. Supp. 3d 810, 818 (N.D. Ill. 2025) ("A claim for breach of express warranty requires the plaintiff to be in privity of contract with the defendant."); *Zylstra v. DRV, LLC*, 8 F.4th 597, 609-610 (7th Cir. 2021) ("Illinois law . . . requires privity of contract to bring a claim of implied warranty of merchantability."); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir.

5

2003) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty."). The invoice and the alleged warranty exhibit attached to the amended complaint reflect that Infinite Peripherals—not IPCM—is the manufacturer and seller of the devices in question. (*See* Am. Compl., Exs. 1-2, at 62-64, Dkt. 17-1). For good measure, Defendants attached another document to their motion that is related to the devices and includes a repair warranty provision that shows Infinite Peripherals as the only party with privity of contract with Plaintiff. (*See* Am. Mot., Ex. 1, at 105-106, Dkt. 27-1).[3] Based on the pleadings, the Court discerns no plausible claim against IPCM, and therefore finds that dismissal is appropriate. Should Plaintiff later identify good faith grounds for including IPCM in this lawsuit, a motion for leave to amend or join can be filed for the Court's consideration.

## II. Breach of Contract and Revocation of Acceptance (Counts I, VI)

Plaintiff alleges that Defendants[4] breached their contract by refusing to pay certain expenses related to their failure to provide devices in conformance with their agreement. (Am. Compl. ¶¶ 39-41, 65-68). "Under Illinois law, to state a cause of action for breach of contract a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citations omitted). In turn, to establish the existence of a contract, the plaintiff must make out three elements: "offer, acceptance, and consideration." *Medline Indus., Inc. v. Ram Medical, Inc.*, 892 F. Supp. 2d 957, 969 (N.D. Ill. 2012) (citations omitted). The Uniform Commercial Code ("UCC"), which applies

---

[3] The Court may consider documents other than the complaint "when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021).

[4] Even though the Court finds that IPCM must be dismissed, it continues to refer to Defendants as a collective due to their joint motion and for simplicity's sake.

to this sale of goods, also provides that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract." 810 ILCS 5/2-207(3).

Plaintiff alleges that after it issued a "request for proposals," Defendants "designed" and "manufactured" about 9,200 "UNFI branded" handheld scanning devices, which Plaintiff purchased. (Am. Compl. ¶¶ 9-13). Plaintiff also alleges that it paid Defendants $6,554,976.79 for the goods and "[t]he sales were evidenced by purchase orders and approximately 177 invoices" that each "included multiple devices and a separate, written express warranty for each device that was shipped." (*Id.* ¶¶ 14-15). Neither side disputes that there was a contract.[5] Defendants instead argue that Plaintiff has not pled a breach of contract claim because "Plaintiff has accepted the Devices, and therefore, has no UCC remedy for breach of contract." (Mot., at 95). Specifically, Defendants maintain that: (1) Plaintiff's notice here is not proper because "the first notice provided by Plaintiff of its purported revocation" was four years after delivery of the devices; and (2) Plaintiff accepted the goods because it "acted inconsistently" with Defendants' ownership pursuant to 810 ILCS 5/2-606(1)(c). (Mot., at 96-97).

Plaintiff concedes that it accepted the goods but insists that revocation of acceptance is properly pled under 810 ILCS 5/2-608 after the discovery of defects with the goods. (Resp., at 114-115). The Court disagrees and concludes that Plaintiff did not properly revoke acceptance; as such, its breach of contract (Count I) and related revocation of acceptance claim (Count V) cannot proceed.

---

[5] Defendants properly dispute that IPCM is a party to any contract, as previously discussed, but not that a contract existed. In their reply, Defendants challenge whether the amended complaint "allege[s] the existence of a valid and enforceable contract." (Reply, at 123, Dkt. 31). Because Defendants did not raise this issue in their opening brief, the new argument is improper and deemed waived. *See Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004) (argument first raised in reply brief waived). Furthermore, that argument contradicts their contention in the opening brief—that a valid contract existed which they did not breach due to Plaintiff's failure to revoke acceptance.

Section 2-608 provides in relevant part that:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
>
> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

810 ILCS 5/2-608(1)(a)-(b). Under the UCC, a buyer may reject goods that "fail in any respect to conform to the contract." 810 ILCS 5/2-601. Where a buyer does not validly reject goods, the goods are deemed to have been accepted. 810 ILCS 5/2-606(1)(b). The rejection of goods must occur within a reasonable time after delivery, and the rejection "is ineffective unless the buyer seasonably notifies the seller." 810 ILCS 5/2-602.

Notice of revocation of acceptance "need not be in any particular form or use particular language." *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 242 (Ill. App. Ct. 1999). However, the notice requires more "than the mere notification of breach." 810 ILCS 5/2-608, cmt. 5. "The buyer must timely and adequately inform the seller that the buyer does not want the goods and does not wish to retain them." *HALO Branded Sols., Inc. v. RTB W., Inc.*, No. 15 C 50152, 2017 WL 11884691, at *6 (N.D. Ill. Dec. 12, 2017) (citing *Boysen v. Antioch Sheet Metal, Inc.*, 306 N.E.2d 69 (Ill. App. Ct. 1974)).

For example, in *HALO*, the court analyzed several circumstances where the plaintiff alleged that it revoked acceptance. There, the plaintiff ordered "welcome kits" for its dialysis patients from the defendant. *Id.* at *1. After four shipments of kits, the plaintiff notified defendant of a "serious situation" with the goods provided in the third and fourth shipments due to water damage and mold. *Id.* at *3. The plaintiff later filed a lawsuit alleging, *inter alia*, that the defendant

breached the parties' contract under a revocation of acceptance theory by "fail[ing] to deliver the kits in a safe and uncontaminated state as required by the parties' contract." *Id.* at \*4.

At the summary judgment stage, the court analyzed several situations where the plaintiff alleged that it revoked acceptance of the kits. *Id.* at \*6. Notably, the plaintiff argued that its email to the defendant that there was a "serious situation" occurring with the mold in the third and fourth shipments of kits constituted revocation of acceptance. *Id.* However, the court found that this email was not a proper revocation but "at most a notification of reported problems," because "nowhere in this email did [the plaintiff] indicate that [it] did not wish to retain" the kits. *Id.* On the other hand, the court found that because a representative of the defendant declared at his deposition that the kits "were damaged while in [the plaintiff's] care, and now [the plaintiff is] disposing of them," the plaintiff had communicated to the defendant that if it did not take possession of the kits, the plaintiff was going to dispose of them. *Id.* at \*7. In other words, this acknowledgement created a factual dispute supporting the plaintiff's theory that it revoked acceptance of the kits. The court therefore denied the defendant's request for summary judgment on the breach of contract claim because it was persuaded that the trier of fact could reasonably construe the defendant's acknowledgement as the plaintiff giving notice to the defendant that it did not wish to retain the kits, and properly revoking acceptance. *Id.*

In contrast, Plaintiff does not allege that it informed Defendants that it did not wish to keep the devices. All Plaintiff pled is that in 2021, "UNFI's customers began complaining about the product," and that "UNFI immediately brought the issues to Defendants' attention." (Am. Compl. ¶¶ 17-18). Similar to the "serious situation" email in *HALO*, Plaintiff's allegations amount to "at most a notification of reported problems," given that Plaintiff has not alleged, nor could the Court infer from the pleadings, that Plaintiff informed Defendants it did not wish to retain the devices.

9

*HALO*, 2017 WL 11884691, at *6. Therefore, Plaintiff's claims that Defendants breached their contract under a revocation of acceptance theory, and related revocation of acceptance claim, both fail.

Even if Plaintiff sufficiently revoked acceptance, its claim still cannot survive dismissal due to Plaintiff providing these allegedly faulty devices to third-party customers. Section 5/2-607(1) states that "the buyer must pay at the contract rate for any goods accepted by it." Under § 5/2-606(1), "Acceptance of goods occurs when the buyer . . . (b) fails to make an effective rejection; or (c) does any act inconsistent with the seller's ownership." "[C]ourts hold that under Illinois law, resale of goods is an act inconsistent with the seller's ownership." *S.A.M. Elecs. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1085 (N.D. Ill. 1999) (quotes omitted). Consequently, even if Plaintiff rejected the allegedly defective goods in a timely manner, its subsequent delivery—either via sale or otherwise—of devices to its customers negated this rejection and amounted to an acceptance. *See F.C. Bloxom Co. v. Tom Lange Co. Int'l, Inc.*, 109 F.4th 925, 935 (7th Cir. 2024) (finding that "[i]t is difficult to imagine an act more 'inconsistent with' [a seller's] ownership" of goods than shipping them to a third-party customer "with whom [the seller] has no contractual relationship"); *S.A.M. Elecs.*, 39 F. Supp. 2d at 1085 (sale of defective frogs amounted to acceptance and negated any revocation); *Fabrica De Tejidos Imperial v. Brandon Apparel Grp.*, 218 F. Supp. 2d 974, 978 (N.D. Ill. 2002) ("Resale of goods—even *after* a timely rejection—has long been recognized as inconsistent with the seller's continued ownership and as constituting an acceptance of the goods."); *Dur-O-Wal, Inc. v. Alfa Installations Corp.*, 1989 WL 103361, *2 (N.D. Ill. Aug. 25, 1989) (selling of masonry wall reinforcement material was inconsistent with seller's ownership and constituted acceptance of goods); *Lorenzo Banfi di Banfi Renzo & Co. v. Davis Congress Shops, Inc.*, 568 F. Supp. 432, 433 (N.D. Ill. 1983) (selling half of an order of

shoes to customers amounted to acceptance of the shoes); *Ozite Corp. v. F.C. Clothier & Sons Corp.*, 264 N.E.2d 833, 834-835 (Ill. App. Ct. 1970) (giving notice of rejection of carpet padding and subsequently selling part of said padding amounted to acceptance).

Accordingly, Counts I and V of the complaint are dismissed due to Plaintiff's failure to state a claim for revocation of acceptance and its subsequent delivery of the devices to its customers.

### III. Breach of Express Warranty (Count II)

Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

810 ILCS 5/2-313(1). "The UCC makes plain that an express warranty is related to the quality or description of the goods." *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057-1058 (Ill. 2007); *see also Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 447 (Ill. 1982) (observing that UCC warranty rules "determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver"). The Supreme Court of Illinois summarizes the protections of an express warranty best:

> In other words, an express warranty, for purposes of the UCC, obligates the seller to deliver goods that conform to the affirmation, promise, description, sample or model. If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time. Even if the buyer is unaware that the goods, as delivered, do not conform to

> the seller's affirmation, promise, description, sample or model, the warranty has been breached.

*Mydlach*, 875 N.E.2d at 1058. To adequately plead a breach of express warranty, a plaintiff must allege: (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty. *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

Here, Plaintiff has failed to adequately plead the terms of the warranty. At most, Plaintiff contends that the warranty is attached to the amended complaint as Exhibit 2; however, that document merely describes the types of written warranties Infinite Peripherals offers, not any specific warranty between these parties. (*See* Am. Compl., Ex. 2, at 63-64, Dkt. 17-1). Plaintiff argues that its express warranty claim is "clearly related to the product functions and defects in materials," (Resp., at 116), and not the repair warranty Defendants attached to their motion. (*Id.*) (stating that the repair warranty is not properly before the Court and does not provide the basis for UNFI's express warranty claim in the amended complaint). But Plaintiff failed to plead how the alleged defect in the materials does not conform to the description of the goods ordered from Defendants. In short, nothing on the face of the complaint states exactly what Plaintiff requested from Defendants and whether, for example, the failure to include a backstop or other parts does not comply with its order. Absent the terms of the warranty—whether written or oral—the Court is unable to determine if Plaintiff adequately pled the elements of a breach of *express* warranty claim. *See, e.g., Buff-Thompson v. Smith & Nephew, Inc.*, No. 19-cv-1232-JES-JEH, 2019 WL 4394736, at *3 (C.D. Ill. Sep. 13, 2019) (dismissing breach of express warranty claim where the plaintiff failed to identify the terms of her express warranty).

As such, Plaintiff's express warranty claim (Count II) is insufficient and cannot proceed.

IV. **Breach of Implied Warranty of Merchantability (Count III)**

In Illinois, "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Higgins v. Yamaha Motor Corp.*, 741 F. Supp. 3d 768, 774 (N.D. Ill. 2024) (quoting 810 ILCS 5/2-314). To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff gave the defendant notice of the defect; and (3) the plaintiff suffered damages as a result of the defective goods. 810 ILCS 5/2-314; *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021). "For goods to be merchantable, they must, among other things, 'pass without objection in the trade under the contract description,' be 'fit for the ordinary purposes for which such goods are used,' and 'conform to the promises or affirmations of fact made on the container or label if any.'" *Higgins*, 741 F. Supp. 3d at 774. Plaintiff's allegations on this claim pass muster.

First, Plaintiff has pled the devices' ordinary purpose and that they were not merchantable at the time of sale. Specifically, it pled that the scanning devices help Plaintiff provide a service to its customers, where the devices "are the hardware component of a UNFI service in which stores are charged weekly to electronically order products from UNFI." (Am. Compl. ¶ 8). In addition, the devices included "pistol mechanisms to allow [Plaintiff's] customer[s] to scan products to, among other functions, order products from UNFI." (*Id.* ¶ 11). However, these "pistol [mechanisms] did not function properly because they were poorly soldered and did not include a proper backstop." (*Id.* ¶ 16).

Second, Plaintiff alleges that it gave Defendants notice and Defendants "acknowledged that their engineering department had failed to consider the expected use of the devices and had

13

failed to include the backstops that were part of the earlier models," therefore, "[a] substantial number of the[] devices proved to be defective because, among other things, the pistol grips did not function properly because they were poorly soldered and did not include a proper backstop." (*Id.* ¶¶ 16, 21).

Finally, Plaintiff has pled that it suffered damages as a result of the defective goods. Namely, Plaintiff alleges that even though Defendants "paid to replace or repair each [faulty] device," they "did not reimburse UNFI for the shipping costs" associated with Plaintiff or its customers sending the devices for repair or replacement, or the costs of shipping replacement devices back to its customers. (*Id.* ¶ 27). Plaintiff estimates that it has lost at least $592,117 due to Defendants' breach. Based on the above allegations, the Court finds that Plaintiff has stated a claim for breach of the implied warranty of merchantability.

Citing *Solvay*, Defendants argue that Plaintiff did not properly allege facts showing that the devices were not fit for their ordinary purpose. (*See* Am. Mot., at 100). In that case, the plaintiff's implied breach of warranty of merchantability claim failed because the plaintiff did not adequately allege the ordinary purpose of the alleged faulty good. *Solvay*, 521 F. Supp. 3d at 726. The complaint there merely alleged that the plaintiff informed the defendant "of its intent to use the [goods] in 'critical' services at its plant," but nothing more. *Id.* Unlike *Solvay*, Plaintiff has alleged the specific purpose of the goods—to scan products to allow customers to electronically order said products from Plaintiff—and why the goods were not merchantable for that purpose. Accordingly, Defendants' motion is denied as it relates to Count III.[6]

---

[6] In addition, Defendants argue that Plaintiff does not allege that the devices were unmerchantable at the time of sale. (Am. Mot., at 101). However, that argument does not sink Plaintiff's claim as it is clear from the face of the complaint that Plaintiff alleges Defendants "acknowledged" that the devices were defective when manufactured due, in part, to Defendants' failure "to include the backstops that were part of the earlier models." (Am. Compl. ¶ 21). The

V. **Breach of Implied Warranty of Fitness for a Particular Purpose (Count IV)**

The UCC as codified in Illinois provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." 810 ILCS 5/2-315. To adequately plead a breach of the implied warranty of fitness for a particular purpose claim, the plaintiff must allege: "(1) a sale of goods, (2) that the seller had reason to know of any particular purpose for which the goods are required, (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that the goods were not fit for the particular purpose for which they were used." *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003). Here, all of these elements are met.

First, Plaintiff alleges that it purchased the scanning devices from Defendants. (Am. Compl. ¶ 8). Second, Plaintiff alleges that, through prior experience of selling Plaintiff an earlier model that performed the same functions as the new devices, "Defendants were familiar with the purposes for which these devices were employed," and the "devices were furnished by Defendants in response to a request for proposals put out by UNFI." (*Id.* ¶¶ 9-10). Third, Plaintiff alleges that it relied on Defendants to "design, manufacture and deliver" the devices, indicating their reliance on Defendants' skills to make said goods. (*Id.* ¶ 12); *see also Halo Branded Sols., Inc. v. RTB W., Inc.*, No. 15 C 50152, 2016 WL 1161340, at *5-6 (N.D. Ill. Mar. 24, 2016) (holding that allegations that the plaintiff relied on the defendant's skill and judgment and the defendant was aware of the purpose of the goods are sufficient). Finally, Plaintiff alleges that the goods were not fit for the

---

Court finds that sufficient to plead that the goods were unmerchantable at the time of sale due to errors by Defendants that preceded the sale of the devices to Plaintiff.

purpose of scanning items for purchase by Plaintiffs customers (as discussed in Section IV above) due to Defendants' failure to include backstops that were part of earlier models. (*Id.* ¶ 21). Accordingly, Plaintiff has adequately pled its breach of implied warranty of fitness for a particular purpose claim.

Defendants argue that Plaintiff's claim cannot survive because it "fails to allege what [UNFI]'s particular purpose was and how [UNFI]'s particular purpose differed from the ordinary purpose of the Devices." (Reply, at 130). In essence, Defendants argue that Plaintiff's breach of the implied warranty of fitness claim (Count IV) fails because is no different than its implied warranty of merchantability claim (Count III). However, courts have allowed claims for both implied warranties to coexist where the facts support each cause of action. *See, e.g., Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (affirming district court's certification of class claims for breaches of the implied warranties of both fitness for a particular purpose and merchantability); *Solvay*, 521 F. Supp. 3d at 728 ("Because the statute provides that both warranties can be created in the same contract and courts have held the same, this Court has no reason to conclude that Count IV and VI cannot coexist in a complaint."); *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1314 (D. Colo. 1984) ("An implied warranty of merchantability and implied warranty of fitness for a particular purpose may coexist when there is sufficient evidence to support the creation of each warranty.").

An official comment to the Illinois-adopted UCC recognizes that a contract "may of course include both" warranties. 810 ILCS 5/2-315, cmt. 2. In addition, the commentary explains that the ordinary purpose and particular purpose envisage two different uses, one is the typical use, and one is the use that is peculiar to the buyer. *Id.* Because the statute provides that both warranties can be created in the same contract and courts have held the same, this Court finds no reason to

16

conclude that Counts III and IV cannot coexist in a complaint and denies Defendants' motion on these grounds.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is granted in part and denied in part. Counts I (breach of contract), II (breach of express warranty), and Count V (revocation of acceptance) are dismissed; Counts III (breach of implied warranty of merchantability) and IV (breach of implied warranty for a particular purpose) remain. Furthermore, all claims are dismissed against Defendant IPC Mobile Holdings, Inc. Remaining Defendant Infinite Peripherals, LLC must answer the surviving counts by March 4, 2026; and the parties are ordered to file a joint proposed discovery plan by March 18, 2026.

**DATED**: February 11, 2026     **ENTERED**:

*LaShonda A. Hunt*
LASHONDA A. HUNT
United States District Judge